UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

D'ANDRE ALEXANDER #731077,

    Plaintiff,

v.

MANDI JOY SALMI, et al.,

    Defendants.

    _____/

Case No. 2:16-cv-96
HON. GORDON J. QUIST

## REPORT AND RECOMMENDATION

Plaintiff D'Andre Alexander filed this *pro se* civil rights action pursuant to 42 U.S.C. § 1983, alleging constitutional violations and state law violations that occurred while he was incarcerated at Marquette Branch Prison. Plaintiff is suing Mental Health Case Manager Mandi Joy Salmi; Mental Health Staff Members Tom Osier, Robin Bailey-Webb, Andrew Boudreau, Amy Robare, and Mark Hares; Mental Health Unit Chief Paul Eyke; Correctional Officer (unknown) Lombard; and Security Classification Officers James Alexander and Shane Place. Defendants, with the exception of Defendant Boudreau who has separate counsel, have moved for summary judgment on the grounds that Plaintiff failed to exhaust his administrative remedies. (ECF No. 31.) Plaintiff has responded. (ECF No. 35.) Defendants have replied. (ECF No. 39.) This matter is now ready for decision.

Plaintiff's claims arise from a series of events related to his mental illness treatment. In October 2014, Plaintiff complained that he was not receiving sufficient medical treatment from his case manager—Defendant Salmi. PageID.7. Plaintiff requested a new case manager, but his request was denied. PageID.7.

On February 2, 2015, Plaintiff was placed in segregation because he was involved in a fight. PageID.7. Shortly thereafter, Defendant Salmi recommended that Plaintiff be reclassified to general population because of his mental health status. PageID.7. However, Defendant Salmi later changed her mind and reclassified Plaintiff to administrative segregation. PageID.7. Plaintiff alleges that Defendants Alexander and Place violated MDOC policy when they did not send the reclassification to the warden for review. PageID.7. Plaintiff stayed in administrative segregation for three months. PageID.7. During those months, Plaintiff became "very depressed and stressed out." PageID.8. Plaintiff also wrote several medical kites, but they were never addressed. PageID.8.

On April 23, 2015, Plaintiff was released from segregation. PageID.8. However, two days later, Plaintiff was placed back in segregation for fabricating a misconduct ticket. PageID.8. While he was in segregation, Plaintiff began suffering from traumatizing visions and flashbacks of his mother's dead body. PageID.8. Plaintiff also alleges that he experienced extreme depression, stress, disorientation, sweating, lack of sleep, and lack of appetite. PageID.8. Plaintiff subsequently requested to see Defendant Salmi to discuss his symptoms. PageID.8. On April 29, 2015, Plaintiff saw Defendant Salmi and requested that he be placed in a mental health program outside of segregation. PageID.8. Defendant Salmi told Plaintiff that he did not qualify because he does not have a serious mental illness. PageID.9. When Plaintiff began discussing his past medical treatment for mental illness, Defendant Salmi told him that he was misdiagnosed. PageID.9. Plaintiff subsequently wrote several medical kites, but Defendant Salmi failed to respond to some of them. PageID.9.

On May 6, 2015, Plaintiff met with Defendant Boudreau. PageID.9. After Plaintiff described his symptoms, Defendant Boudreau prescribed Plaintiff with an anti-

psychotic drug.  PageID.9.  On May 19, 2015, Plaintiff met with Defendant Salmi and told her "that he needed help and that he was losing it."  Page ID.22. [1]  Defendant Salmi replied that there was nothing wrong with Plaintiff.  Page ID.22.

On May 26, 2015, Plaintiff attempted to hang himself because he could no longer stand being in segregation.  Page ID.22.  Plaintiff was then cut down by staff and rushed to healthcare.  Page ID.22.  Plaintiff was subsequently moved to a different unit and placed on suicide watch.  Page ID.22.  The next day, Defendant Eyke interviewed Plaintiff regarding his suicide attempt.  Page ID.22.  Plaintiff told Defendant Eyke about the problems he was having in segregation.  Page ID.22.  However, Defendant Eyke refused to move Plaintiff from segregation. Page ID.22.

On May 29, 2015, Defendant Salmi met with Plaintiff at his observation cell. Page ID.22.  Defendant Salmi told Plaintiff that she would make sure that he would go back to segregation.  Page ID.22.  On June 1, 2015, Defendant Robare visited Plaintiff at his observation cell.  Plaintiff requested that he not be placed back into segregation and asked Defendant Robare to help him with his appeal.  Page ID.22.  Defendant Robare refused.  Page ID.22.  The next day, Plaintiff again asked Defendant Salmi to send him back to segregation.  Page ID.22.  However, Defendant Salmi refused.  Page ID.22.  Plaintiff also spoke to Defendant Hares regarding Defendant Salmi's alleged misconduct.  Page ID.23.  Defendant Hares stated that he would report the issues as required by policy but never did.  Page ID.23.  On June 4, 2015, Plaintiff was sent back to segregation.  PageID.23.  On June 23, 2015, Plaintiff met with Defendant Robare. PageID.23.  Plaintiff again requested to be moved from segregation, but Defendant Robare told him that he "didn't qualify."  PageID.23

---

[1] PageID.22-24 are actually pages 6-8 in Plaintiff's complaint.  Apparently, the pages were mixed up when Plaintiff filed his complaint.

On July 6, 2015, Plaintiff met with a psychiatrist. PageID.23. According to Plaintiff, the psychiatrist "was in disbelief at how Plaintiff's needs were being unmet." PageID.23. Plaintiff was subsequently transferred out of segregation on August 1, 2015. PageID.23.

In the screening opinion, the Court only addressed Plaintiff's Eighth Amendment claims. (ECF No. 7, PageID.87.) After further review of the complaint, Plaintiff also alleges that Defendants violated his rights to Equal Protection under the Fourteenth Amendment and that Defendant Salmi retaliated against him in violation of the First Amendment.

In addition, after reviewing Plaintiff's response brief, it appears that Plaintiff may believe that he has also asserted a conspiracy claim against Defendants. To the extent Plaintiff is asserting a conspiracy claim, the claim should be dismissed for failure to state a claim. A civil conspiracy under § 1983 is "an agreement between two or more persons to injure another by unlawful action." *Revis v. Meldrum*, 489 F.3d 273, 290 (6th Cir. 2007). The plaintiff must show the existence of a single plan, that the alleged coconspirator shared in the general conspiratorial objective to deprive the plaintiff of a federal right, and that an overt action committed in furtherance of the conspiracy caused an injury to the plaintiff. *Hensley v. Gassman*, 693 F.3d 681, 695 (6th Cir. 2012); *Bazzi v. City of Dearborn*, 658 F.3d 598, 602 (6th Cir. 2011). Moreover, a plaintiff must plead a conspiracy with particularity, as vague and conclusory allegations unsupported by material facts are insufficient. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 565 (2007) (recognizing that allegations of conspiracy must be supported by allegations of fact that support a "plausible suggestion of conspiracy," not merely a "possible" one); *Fieger v. Cox*, 524 F.3d 770, 776 (6th Cir. 2008); *Spadafore v. Gardner*, 330 F.3d 849, 854 (6th Cir. 2003); *Gutierrez v. Lynch*, 826 F.2d 1534, 1538 (6th Cir. 1987).

Here, Plaintiff's allegations of conspiracy are conclusory and speculative. Plaintiff describes a number of discrete facts that occurred over a period of time involving numerous individual officers. Plaintiff has provided no allegations establishing a link between the alleged conspirators or any agreement between them. Therefore, in the opinion of the undersigned, Plaintiff's conspiracy claim should be dismissed.

Next, the undersigned addresses Defendants' motion for summary judgment. Summary judgment is appropriate when the record reveals that there are no genuine issues as to any material fact in dispute and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Kocak v. Comty. Health Partners of Ohio, Inc.*, 400 F.3d 466, 468 (6th Cir. 2005); *Thomas v. City of Chattanooga*, 398 F.3d 426, 429 (6th Cir. 2005). The standard for determining whether summary judgment is appropriate is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *State Farm Fire & Cas. Co. v. McGowan*, 421 F.3d 433, 436 (6th Cir. 2005) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986)); *see also Tucker v. Union of Needletrades Indus. & Textile Employees*, 407 F.3d 784, 787 (6th Cir. 2005). The court must consider all pleadings, depositions, affidavits, and admissions on file, and draw all justifiable inferences in favor of the party opposing the motion. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Twin City Fire Ins. Co. v. Adkins*, 400 F.3d 293, 296 (6th Cir. 2005).

A prisoner's failure to exhaust his administrative remedies is an affirmative defense, which Defendants have the burden to plead and prove. *Jones v. Bock*, 549 U.S. 199, 212-16 (2007). A moving party without the burden of proof need show only that the opponent cannot sustain his burden at trial. *See Morris v. Oldham County Fiscal Court*, 201 F.3d 784, 787

(6th Cir. 2000); *see also Minadeo v. ICI Paints*, 398 F.3d 751, 761 (6th Cir. 2005). A moving party with the burden of proof faces a "substantially higher hurdle." *Arnett v. Myers*, 281 F.3d 552, 561 (6th Cir. 2002); *Cockrel v. Shelby County Sch. Dist.*, 270 F.3d 1036, 1056 (6th Cir. 2001). "Where the moving party has the burden -- the plaintiff on a claim for relief or the defendant on an affirmative defense -- his showing must be sufficient for the court to hold that no reasonable trier of fact could find other than for the moving party." *Calderone v. United States*, 799 F.2d 254, 259 (6th Cir. 1986) (quoting W. SCHWARZER, *Summary Judgment Under the Federal Rules: Defining Genuine Issues of Material Fact*, 99 F.R.D. 465, 487-88 (1984)). The United States Court of Appeals for the Sixth Circuit repeatedly has emphasized that the party with the burden of proof "must show the record contains evidence satisfying the burden of persuasion and that the evidence is so powerful that no reasonable jury would be free to disbelieve it." *Arnett*, 281 F.3d at 561 (quoting 11 JAMES WILLIAM MOORE, ET AL., MOORE'S FEDERAL PRACTICE § 56.13[1], at 56-138 (3d ed. 2000); *Cockrel*, 270 F.2d at 1056 (same). Accordingly, summary judgment in favor of the party with the burden of persuasion "is inappropriate when the evidence is susceptible of different interpretations or inferences by the trier of fact." *Hunt v. Cromartie*, 526 U.S. 541, 553 (1999).

Pursuant to the applicable portion of the Prison Litigation Reform Act (PLRA), 42 U.S.C. § 1997e(a), a prisoner bringing an action with respect to prison conditions under 42 U.S.C. § 1983 must exhaust his available administrative remedies. *See Porter v. Nussle*, 534 U.S. 516, 532 (2002); *Booth v. Churner*, 532 U.S. 731, 733 (2001). A prisoner must first exhaust available administrative remedies, even if the prisoner may not be able to obtain the specific type of relief he seeks in the state administrative process. *See Porter*, 534 U.S. at 520; *Booth*, 532 U.S. at 741; *Knuckles El v. Toombs*, 215 F.3d 640, 642 (6th Cir. 2000); *Freeman v. Francis*, 196

F.3d 641, 643 (6th Cir. 1999). In order to properly exhaust administrative remedies, prisoners must complete the administrative review process in accordance with the deadlines and other applicable procedural rules. *Jones v. Bock*, 549 U.S. 199, 218-19 (2007); *Woodford v. Ngo*, 548 U.S. 81, 90-91 (2006). "Compliance with prison grievance procedures, therefore, is all that is required by the PLRA to 'properly exhaust.'" *Jones*, 549 U.S. at 218-19. In rare circumstances, the grievance process will be considered unavailable where officers are unable or consistently unwilling to provide relief; where the exhaustion procedures may provide relief, but no ordinary prisoner can navigate it; or "where prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." *Ross v. Blake*, 136 S.Ct. 1850, 1859-60 (2016).

MDOC Policy Directive 03.02.130 (effective July 9, 2007), sets forth the applicable grievance procedures for prisoners in MDOC custody at the time relevant to this complaint. Inmates must first attempt to resolve a problem orally within two business days of becoming aware of the grievable issue, unless prevented by circumstances beyond his or her control. *Id.* at ¶ P. If oral resolution is unsuccessful, the inmate may proceed to Step I of the grievance process and submit a completed grievance form within five business days of the attempted oral resolution. *Id.* at ¶¶ P, V. The Policy Directive also provides the following directions for completing grievance forms: "The issues should be stated briefly but concisely. Information provided is to be limited to the facts involving the issue being grieved (i.e., who, what, when, where, why, how). Dates, times, places and names of all those involved in the issue being grieved are to be included." *Id.* at ¶ R (emphasis in original).[2] The inmate submits the grievance to a designated grievance coordinator, who assigns it to a respondent. *Id.* at ¶ V.

---

[2] In *Holoway v. McClaren*, No. 15-2184 (6th Cir., April 7, 2016) (unpublished), the Sixth Circuit concluded that where a plaintiff fails to name each defendant in his grievance, the un-named defendants may not be dismissed for failure to

If the inmate is dissatisfied with the Step I response, or does not receive a timely response, he may appeal to Step II by obtaining an appeal form within ten business days of the response, or if no response was received, within ten days after the response was due. *Id.* at ¶¶ T, BB. The respondent at Step II is designated by the policy. *Id.* at ¶ DD. If the inmate is still dissatisfied with the Step II response, or does not receive a timely Step II response, he may appeal to Step III using the same appeal form. *Id.* at ¶¶ T, FF. The Step III form shall be sent within ten business days after receiving the Step II response, or if no Step II response was received, within ten business days after the date the Step II response was due. *Id.* at ¶¶ T, FF. The Grievance and Appeals Section is the respondent for Step III grievances on behalf of the MDOC director. *Id.* at ¶ GG. "The total grievance process from the point of filing a Step I grievance to providing a Step III response shall generally be completed within 120 calendar days unless an extension has been approved . . . ." *Id.* at ¶ S.

Plaintiff filed five grievances related to his claims in this case. On October 28, 2014, Plaintiff filed Grievance # MBP-14-10-01881-12B4. At Step 1, Plaintiff alleged that Defendant Salmi was not accommodating his mental health needs. Plaintiff further complained that he was not receiving sufficient counseling and requested a new case manager. Plaintiff's grievance was subsequently denied at Step I by Defendant Bailey-Webb, who was the respondent, and Defendant Eyke, who was the reviewer. At Step II, Plaintiff again complained about Defendant Salmi. Plaintiff also added that he was pressured to "sign off" on the grievance by the respondent at Step I and that Defendant Boudreau retaliated against him by taking

---

exhaust grievance remedies if the MDOC did not reject the grievance under the policy requiring a grievant to name each individual involved. The Sixth Circuit stated: "Because MDOC officials addressed the merits of Holloway's grievance at each step and did not enforce any procedural requirements, Holloway's failure to identify the defendants named in this lawsuit and to specify any wrongdoing by them in his grievances cannot provide the basis for dismissal of his complaint for lack of exhaustion." *Id*. at 3. The Sixth Circuit failed to provide any guidance as to how the MDOC might determine who the plaintiff intended to name in a future federal lawsuit at the time the plaintiff filed his Step I grievance.

Plaintiff off his anti-depressant medication. Plaintiff's grievance was subsequently denied at Step II by Defendant Osier. At Step III, Plaintiff alleged that the Step II respondent violated policy by "not ever having his illegal response reviewed." PageID.17. After writing the Step III grievance, Plaintiff alleges that he gave the grievance to Fred Govern, who is an ARUS at Marquette Branch Prison, on January 20, 2015. However, Plaintiff alleges that he never received a response to his Step III grievance.

One June 3, 2015, Plaintiff filed Grievance # MBP-15-06-01007-12B1.[3] At Step I, Plaintiff alleged that Defendant Lombard refused to call mental health services after Plaintiff explained that he was having suicidal thoughts in segregation. Plaintiff also alleged that Defendant Salmi and "various John and Jane Doe Nurses" refused to respond to his medical kites. Plaintiff now alleges that the "various John and Jane Doe Nurses" are Defendants Robare and Hares. Plaintiff further alleged that he notified the Mental Health Unit Chief of his suicidal thoughts, but Plaintiff never received a response. Plaintiff alleges that Defendant Eyke is the Mental Health Unit Chief. Plaintiff's grievance was subsequently denied at Step I by Defendant Hares, who was the respondent, and Defendant Eyke, who was the reviewer. Plaintiff alleges that he requested the forms required to appeal to Step II. After not receiving the required forms, Plaintiff alleges that he attempted to submit a handwritten Step II grievance. In this handwritten grievance, Plaintiff reiterated the facts in Step I. Plaintiff alleges that he never received a response on his Step II grievance. Shortly thereafter, Plaintiff attempted to submit a handwritten Step III grievance. Plaintiff alleges that he gave the Step III grievance to Fred Govern, but never received a response.

One May 12, 2015, Plaintiff filed Grievance # MBP-15-05-00833-12B3. At Step I, Plaintiff alleged that Defendant Salmi was disregarding Plaintiff's mental needs by failing to

---

[3] Plaintiff originally sent the grievance on June 3, 2015. Apparently, Plaintiff resent the grievance on June 8, 2015.

help Plaintiff be removed from segregation. Plaintiff's grievance was subsequently denied at Step I by Defendant Robare, who was the respondent, and Defendant Eyke, who was the reviewer. At Step II, Plaintiff alleged that he raised claims of conspiracy and deliberate indifference against Defendant Robare.[4] Plaintiff did not receive a response on his Step II grievance. Shortly thereafter, Plaintiff attempted to submit a handwritten Step III grievance. Plaintiff alleges that he gave the Step III grievance to Fred Govern, but never received a response.

On June 22, 2015, Plaintiff filed Grievance # MBP-15-06-01089-12B3. At Step I, Plaintiff alleged that Defendant Robare was not allowing Plaintiff to appeal his segregation placement because he did not have a proper medical diagnosis. Plaintiff also alleged that he showed Defendants Hares and Robare medical documentation of his mental illness diagnosis. Plaintiff's grievance was subsequently denied at Step I by Defendant Hares, who was the respondent, and Defendant Eyke, who was the reviewer. Plaintiff alleges that he requested the forms required to appeal to Step II. After not receiving the required forms, Plaintiff attempted to submit a handwritten Step II grievance. In this handwritten grievance, Plaintiff reiterated the facts in Step I. Plaintiff alleges that he never received a response on his Step II grievance. Shortly thereafter, Plaintiff attempted to submit a handwritten Step III grievance. Plaintiff alleges that he gave the Step III grievance to Fred Govern, but never received a response.

On June 7, 2015, Plaintiff filed Grievance #MBP-15-06-0991-17I. At Step I, Plaintiff alleged that Defendant Salmi refused to "acknowledge, address, and log medical kites." Plaintiff's grievance was subsequently denied at Step I by Defendant Robare, who was the respondent, and Defendant Eyke, who was the reviewer. Plaintiff alleges that he requested the forms required to appeal to Step II. After not receiving the required forms, Plaintiff attempted to

---

[4] Plaintiff did not submit a copy of this Step II grievance. Plaintiff states that a copy of this grievance is unavailable due to "staff neglect." PageID.312.

submit a handwritten Step II grievance. In this handwritten grievance, Plaintiff reiterated the facts in Step I. Plaintiff also added that Defendant Robare lied when she responded to the grievance at Step I. Plaintiff alleges that he never received a response on his Step II grievance. Shortly thereafter, Plaintiff attempted to submit a handwritten Step III grievance. Plaintiff alleges that he gave the Step III grievance to Fred Govern, but never received a response.

Based on these grievances, it is clear that Plaintiff failed to exhaust his claims against Defendants Alexander and Place. In his complaint, Plaintiff alleged that Defendants Alexander and Place did not follow policy when they failed to send documents to the warden for review. However, Defendants Alexander and Place are not named in any of the grievances that Plaintiff filed or attempted to file. In addition, Plaintiff did not attempt to describe how he exhausted Defendants Alexander and Place in his response brief. Therefore, in the opinion of the undersigned, Plaintiff failed to exhaust his claims against Defendants Alexander and Place.

Next, Defendants argue that these grievances do not exhaust any of Plaintiff's claims because Plaintiff did not appeal the grievances through Step III. The record shows that none of the five grievances received a Step III response. However, Plaintiff asserts that he attempted to appeal the grievances through Step III, but a prison official refused to send the Step III grievances. Thus, according to Plaintiff, he exhausted all *available* administrative remedies. To rebut this argument, Defendants submitted an affidavit in which the prison official claims that he sent out all grievances that Plaintiff gave him. Defendants also note that Plaintiff previously filed a lawsuit against this prison official for refusing to send out his mail. Defendants contend that it is inconceivable that Plaintiff would continue to ask the same prison official to send out his Step III grievances when he is already suing the same prison official for failing to send out his mail. Despite Defendants' persuasive arguments, it is still possible that the prison official

refused to send out the Step III grievances. Therefore, in the opinion of the undersigned, there is a genuine issue of material fact as to whether Plaintiff exhausted all available administrative remedies.

Defendants also argue that Grievance # MBP-14-10-01881-12B4 did not exhaust any claims because even if Plaintiff gave his Step III grievance to the prison official as he claims, the Step III grievance was not timely under the MDOC policy. Defendants contend that Plaintiff received his Step II response on December 15, 2014. According to MDOC policy, Plaintiff had 10 days to submit his Step III appeal. Plaintiff failed to give his Step III appeal to the prison official until January 20, 2015. Thus, it would appear that Plaintiff's Step III appeal was untimely. However, Defendant disputes that he actually received the Step II response on December 15, 2014. Therefore, in the opinion of the undersigned, Defendants have failed to meet their burden to show that Plaintiff failed to exhaust all available administrative remedies.

Accordingly, it is recommended that Defendants' motion for summary judgment (ECF No. 19) be granted in part and denied in part. Plaintiff's claims against Defendants Alexander and Place should be dismissed because Plaintiff failed to exhaust administrative remedies. It is further recommended that Plaintiff's conspiracy claim should be dismissed for failure to state a claim. Therefore, Plaintiff's remaining claims include a retaliation claim against Defendant Salmi; and Eighth Amendment claims, Equal Protection claims, and various state law claims against Defendants Salmi; Osier, Bailey-Webb, Boudreau, Robare, Hares, Eyke, and Lombard.

NOTICE TO PARTIES: Objections to this Report and Recommendation must be served on opposing parties and filed with the Clerk of the Court within fourteen (14) days of receipt of this Report and Recommendation. 28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b); W.D. Mich.

-13-

LCivR 72.3(b). Failure to file timely objections constitutes a waiver of any further right to appeal. *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). *See also Thomas v. Arn*, 474 U.S. 140 (1985).

Dated: February 13, 2017

                                                  /s/ Timothy P. Greeley
                                                  TIMOTHY P. GREELEY
                                                  UNITED STATES MAGISTRATE JUDGE