UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

D'ANDRE ALEXANDER #731077,

    Plaintiff,

v.

    Case No. 2:16-cv-96
    HON. GORDON J. QUIST

MANDI JOY SALMI, et al.,

    Defendants.

_____/

## REPORT AND RECOMMENDATION

Plaintiff D'Andre Alexander filed this *pro se* civil rights action pursuant to 42 U.S.C. § 1983 alleging constitutional and state law violations that occurred while he was incarcerated at Marquette Branch Prison. One Defendant—Nurse Practitioner Alexander Boudreau—has moved for summary judgment pursuant to Fed. R. Civ. P. 56(a). (ECF No. 55.) Plaintiff has responded. (ECF No. 60.) Defendant Boudreau has replied. (ECF No. 61.) This matter is now ready for decision.[1]

Plaintiff asserts an Eighth Amendment claim, as well as negligence, gross negligence, and medical malpractice state law claims against Defendant Boudreau.[2] These claims stem from Plaintiff's medical treatment while housed in segregation. According to his medical records, Plaintiff has had a history of past noncompliance and had been diagnosed with Mood Disorder, Poly Substance Dependence, and Antisocial Personality Disorder. On April 25, 2015,

---

[1] Plaintiff also filed a sur-reply (ECF No. 62), However, Plaintiff never requested permission to file a sur-reply as required by W.D. LCivR 7.2(c).
[2] Plaintiff also initially asserted an equal protection claim against Defendant Boudreau. In his response brief, Plaintiff concedes that he failed to state an equal protection claim against Defendant Boudreau, and Plaintiff consents to its dismissal. PageID.497.

after being released from segregation for only two days, Plaintiff was transferred back to segregation for threatening misconduct. Defendant Boudreau evaluated Plaintiff in segregation on May 14, 2015. During the evaluation, Plaintiff told Defendant Boudreau that he could no longer handle segregation. Plaintiff also mentioned the death of his mother, who apparently committed suicide when he was a child. The medical records state that Plaintiff was paranoid, irritable, and depressed. Notably, Plaintiff denied having any thoughts of self-harm. Despite Plaintiff's request, Defendant Boudreau did not refer Plaintiff to see a psychiatrist. Instead, Defendant Boudreau prescribed Plaintiff a low dose of Risperdal. Risperdal is an antipsychotic drug used to treat a variety of mental health issues including paranoia, bipolar disorder, and schizophrenia.

On May 26, 2015, Plaintiff attempted to hang himself in segregation. Prison staff quickly cut Plaintiff down and rushed him to healthcare. Plaintiff was then moved to a different unit and remained on observation for over a week. He returned to segregation on June 4, 2015. Plaintiff does not appear to have suffered any long-term health effects from the attempted hanging.

On June 26, 2015, Defendant Boudreau again evaluated Plaintiff. Plaintiff was very angry during the evaluation. He called Defendant Boudreau "android" and accused him of trying to erase his thoughts with medication. Plaintiff also thought Defendant Boudreau's emblem on his shirt was a gang symbol. Because of Plaintiff's anger and delusions, Defendant Boudreau was unable to discuss his treatment during the evaluation. After the evaluation, Defendant Boudreau referred Plaintiff to a psychiatrist.

On July 7, 2015, Plaintiff was evaluated by a psychiatrist. The psychiatrist determined that Plaintiff was suffering from a brief active psychosis "for approximately the past month." The psychiatrist noted that this diagnosis is consistent with Plaintiff's previous diagnosis

of Antisocial Personality Disorder. The psychiatrist also found that Plaintiff may have PTSD from his mother's death. Shortly thereafter, the psychiatrist appealed Plaintiff out of segregation.

Summary judgment is appropriate only if the moving party establishes that there is no genuine issue of material fact for trial and that he is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-323 (1986). If the movant carries the burden of showing there is an absence of evidence to support a claim or defense, then the party opposing the motion must demonstrate by affidavits, depositions, answers to interrogatories, and admissions on file, that there is a genuine issue of material fact for trial. *Id.* at 324-25. The nonmoving party cannot rest on its pleadings but must present "specific facts showing that there is a genuine issue for trial." *Id.* at 324 (quoting Fed. R. Civ. P. 56(e)). The evidence must be viewed in the light most favorable to the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986). Thus, any direct evidence offered by the plaintiff in response to a summary judgment motion must be accepted as true. *Muhammad v. Close*, 379 F.3d 413, 416 (6th Cir. 2004) (*citing Adams v. Metiva*, 31 F.3d 375, 382 (6th Cir. 1994)). However, a mere scintilla of evidence in support of the nonmovant's position will be insufficient. *Anderson*, 477 U.S. at 251-52. Ultimately, the court must determine whether there is sufficient "evidence on which the jury could reasonably find for the plaintiff." *Id.* at 252. *See also Leahy v. Trans Jones, Inc.*, 996 F.2d 136, 139 (6th Cir. 1993) (single affidavit, in presence of other evidence to the contrary, failed to present genuine issue of fact); *cf. Moore, Owen, Thomas & Co. v. Coffey*, 992 F.2d 1439, 1448 (6th Cir. 1993) (single affidavit concerning state of mind created factual issue).

Plaintiff asserts an Eighth Amendment claim against Defendant Boudreau. Plaintiff alleges that Defendant Boudreau acted deliberately indifferent to his serious mental health needs by failing to refer him to a psychiatrist after the May 14 evaluation. Plaintiff claims

that MDOC policy required Defendant Boudreau to refer him to a psychiatrist on May 14. Plaintiff also states that if Defendant Boudreau referred Plaintiff to a psychiatrist after the first evaluation, he would have been appealed out of segregation by the psychiatrist and never attempted to hang himself on May 26, 2015.

The Eighth Amendment obligates prison authorities to provide medical care to incarcerated individuals, as a failure to provide such care would be inconsistent with contemporary standards of decency. *Estelle v. Gamble*, 429 U.S. 102, 103-04 (1976). A prison official violates the Eighth Amendment when the official is deliberately indifferent to the serious medical needs of a prisoner. *Id.* at 104-05; *Comstock v. McCrary,* 273 F.3d 693, 702 (6th Cir. 2001).

A claim for the deprivation of adequate medical care has an objective and a subjective component. *Farmer v. Brennan,* 511 U.S. 825, 834 (1994). To satisfy the objective component, the plaintiff must allege that the medical need at issue is sufficiently serious. *Id.* In other words, the inmate must show that he is incarcerated under conditions posing a substantial risk of serious harm. *Id.* A serious medical need is "one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Blackmore v. Kalamazoo County,* 390 F.3d 890, 897 (6th Cir. 2004) (citing *Gaudreault v. Municipality of Salem,* 923 F.2d 203, 208 (1st Cir. 1990)).

The subjective component requires an inmate to show that prison officials have "a sufficiently culpable state of mind in denying medical care." *Brown v. Bargery,* 207 F.3d 863, 867 (6th Cir. 2000) (citing *Farmer,* 511 U.S. at 834). Deliberate indifference "entails something more than mere negligence," *Farmer,* 511 U.S. at 835, but can be "satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will

result." *Id.* Under *Farmer*, "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 837.

Not every claim by a prisoner that he has received inadequate medical treatment states a violation of the Eighth Amendment. *Estelle,* 429 U.S. at 105. As the Supreme Court explained:

> [A]n inadvertent failure to provide adequate medical care cannot be said to constitute an unnecessary and wanton infliction of pain or to be repugnant to the conscience of mankind. Thus, a complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. Medical malpractice does not become a constitutional violation merely because the victim is a prisoner. In order to state a cognizable claim, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs.

*Id.* at 105-06 (quotations omitted). Thus, differences in judgment between an inmate and prison medical personnel regarding the appropriate medical diagnoses or treatment are not enough to state a deliberate indifference claim. *Sanderfer v. Nichols,* 62 F.3d 151, 154-55 (6th Cir. 1995); Ward v. Smith, No. 95-6666, 1996 WL 627724, at *1 (6th Cir. Oct. 29, 1996). This is so even if the misdiagnosis results in an inadequate course of treatment and considerable suffering. *Gabehart v. Chapleau,* No. 96-5050, 1997 WL 160322, at *2 (6th Cir. Apr. 4, 1997).

The Sixth Circuit distinguishes "between cases where the complaint alleges a complete denial of medical care and those cases where the claim is that a prisoner received inadequate medical treatment." *Westlake v. Lucas,* 537 F.2d 857, 860 n.5 (6th Cir. 1976). If "a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims which sound in state tort law." *Id.*; *see also Rouster v. Saginaw Cnty.,*

749 F.3d 437, 448 (6th Cir. 2014); *Perez v. Oakland County,* 466 F.3d 416, 434 (6th Cir. 2006); *Kellerman v. Simpson,* 258 F. App'x 720, 727 (6th Cir. 2007); *McFarland v. Austin,* 196 F. App'x 410 (6th Cir. 2006); *Edmonds v. Horton,* 113 F. App'x 62, 65 (6th Cir. 2004); *Brock v. Crall,* 8 F. App'x 439, 440 (6th Cir. 2001); *Berryman v. Rieger,* 150 F.3d 561, 566 (6th Cir. 1998). "Where the claimant received treatment for his condition, as here, he must show that his treatment was 'so woefully inadequate as to amount to no treatment at all.'" *Mitchell v. Hininger,* 553 F. App'x 602, 605 (6th Cir. 2013) (quoting *Alspaugh v. McConnell,* 643 F.3d 162, 169 (6th Cir. 2011)).

First, the undersigned must determine whether Plaintiff can satisfy the objective prong of the deliberate indifference test. The Sixth Circuit has "held that 'psychological needs may constitute serious medical needs, especially when they result in suicidal tendencies.'" *Comstock v. McCrary,* 273 F.3d 693, 703 (6th Cir. 2001) (quoting Horn v. Madison Cty. Fiscal Ct., 22 F.3d 653, 660 (6th Cir. 1994)). Here, Plaintiff alleges that Defendant Boudreau was deliberately indifferent to his serious mental health needs, including the risk of suicide. Therefore, Plaintiff satisfies the objective prong of the deliberate indifference test.

Next, the undersigned must determine whether Plaintiff can satisfy the subjective prong of the deliberate indifference test. In the prisoner "suicide context, plaintiff must show that there was a 'strong,' 'obvious,' or 'clearly foreseeable' likelihood 'that he would attempt to take his own life in such a manner that failure to take adequate precautions amounted to deliberate indifference.'" *Broughton v. Premier Health Care Servs.*, 656 F. App'x 54, 57 (6th Cir. 2016) (quoting *Gray v. City of Detroit,* 399 F.3d 612, 616 (6th Cir. 2005)).

Here, Plaintiff cannot satisfy the subjective prong of the deliberate indifference test. There is no evidence in the record to suggest that Plaintiff presented a suicide risk at the

May 14 evaluation, let alone a "strong," "obvious," or "clearly foreseeable" risk. During the evaluation, Plaintiff expressly denied having any thoughts of self-harm. Although Plaintiff had a history of mental health issues, there is no evidence that Plaintiff had ever attempted suicide in the past. In his affidavit, Plaintiff claims that he told Defendant Boudreau that he could no longer cope in segregation; however, this statement does not necessarily suggest that Plaintiff was a suicide risk. In fact, Defendant Boudreau had good reasons to doubt the sincerity of Plaintiff's statements because Plaintiff had served multiple stints in segregation over the past year (at least once for a duration of two months) without any issues. Moreover, Plaintiff had a history of noncompliance and exhibited manipulative behavior.

In addition, Plaintiff cannot establish that Defendant Boudreau was deliberately indifferent to his other serious mental health needs. Plaintiff's main complaint against Defendant Boudreau is that he did not follow MDOC policy. According to Plaintiff, MDOC Policy Directive 04.06.182, (effective 12/29/2010), required Defendant Boudreau to refer Plaintiff to a psychiatrist during the May 14 evaluation. According to Defendant Boudreau, he was not required to refer Plaintiff to a psychiatrist because Plaintiff was only diagnosed with minor mental health problems. MDOC Policy Directive 04.06.182, (effective 12/29/2010) states:

> When making rounds of segregation units, staff shall note behavior of any prisoner which seems to be symptomatic of mental illness or which seems to display serious deficiencies in adaptive skills due to a mental disability and record that observation in the unit logbook. In addition, a Mental Health Services Referral (CHX-212) shall be completed for each identified prisoner and given to health care staff who make daily rounds in the unit and to the shift commander. . . . .
>
> Upon receipt of a completed Mental Health Services Referral (CHX-212), health care staff shall ensure that each identified prisoner is referred immediately for evaluation by an OPMHT member or a QMHP. Each referred prisoner shall be seen by an

> OPMHT member or the QMHP as soon as possible but no later
> than one business day after the referral.

*Id.* at ¶¶ O, P. In his response brief, Plaintiff stated that Defendant Boudreau is a Qualified Mental Health Professional (QMHP). PageID.488, 492. Thus, the policy does not appear to require Defendant Boudreau to refer Plaintiff to a psychiatrist; instead, the policy appears to require other staff members to refer prisoners to Defendant Boudreau. Nonetheless, even assuming that the prison policy required Defendant Boudreau to refer Plaintiff to a psychiatrist, a violation of prison policy does not necessarily rise to the level of a constitutional violation. *See Broughton v. Premier Health Care Servs*, 656 F. App'x 54, 57 (6th Cir. 2016) (determining that the failure to follow written protocols did not amount to deliberate indifference); *Barner v. Mackie*, 2017 WL 1531874, at *2 (W.D. Mich. Apr. 28, 2017) (holding that a violation of prison policy, which required each inmate to receive a physical examination upon arriving at the prison, does itself amount to a constitutional violation); *see also Laney v. Farley,* 501 F.3d 577, 581 n.2 (6th Cir. 2007); *McVeigh v. Bartlett,* 52 F.3d 325 (6th Cir. 1995) (unpublished).

In addition, this is not a case in which Defendant Boudreau completely ignored Plaintiff's medical health needs. To the contrary, Defendant Boudreau, a medical/psychological provider, evaluated Plaintiff on multiple occasions in segregation. Based on his evaluation and medical judgment, Defendant Boudreau prescribed a medication to treat Plaintiff's symptoms. Plaintiff basically disagrees with this treatment plan and believes that he should have been referred to a psychiatrist. A mere disagreement in treatment does not amount to an Eighth Amendment claim. *See, e.g.*, *Kosloski v. Dunlap,* 347 Fed. App'x 177, 180 (6th Cir. 2009); *Hix v. Tennessee Dep't of Corr.*, 196 Fed. App'x. 350, 357 (6th Cir. 2006).

Plaintiff also claims that the fact that Defendant Boudreau referred him to a psychiatrist on June 26 is evidence that he should have been referred on May 14. Yet, Plaintiff

cannot realistically argue that his symptoms were the same on May 14 and June 26. During the May 14 evaluation, Plaintiff was irritable, depressed, and "start[ed] to exhibit paranoia." However, Plaintiff cooperated with Defendant Boudreau and they were able to discuss a treatment plan, which resulted in Plaintiff being prescribed Risperdal. During the June 26 evaluation, Plaintiff refused to cooperate. Plaintiff called Defendant Boudreau "android" and claimed that he was trying to erase his mind. It was apparent to Defendant Boudreau that Plaintiff's symptoms had escalated and that is why Defendant Boudreau referred Plaintiff to a psychiatrist. Defendant Boudreau made a medical judgment to treat Plaintiff's symptoms with a prescription drug and that a referral was not needed on May 14. The undersigned will not question this medical judgment.

After viewing the facts in a light most favorable to Plaintiff, the undersigned finds that no reasonable jury could conclude that Defendant Boudreau acted deliberately indifferent to Plaintiff's serious medical needs. Therefore, in the opinion of the undersigned, Defendant Boudreau is entitled to judgment as a matter of law on Plaintiff's Eighth Amendment claim.

Finally, the undersigned must address Plaintiff's pending state law claims. In determining whether to retain supplemental jurisdiction, "[a] district court should consider the interests of judicial economy and the avoidance of multiplicity of litigation and balance those interests against needlessly deciding state law issues." *Landefeld v. Marion Gen. Hosp.*, 994 F.2d 1178, 1182 (6th Cir. 1993). Ordinarily, where a district court has exercised jurisdiction over a state-law claim solely by virtue of supplemental jurisdiction and the federal claims are dismissed prior to trial, the court will dismiss the remaining state-law claims. *Id.* Dismissal, however, remains "purely discretionary." *Carlsbad Tech., Inc. v. HIF Bio, Inc.*, 556 U.S. 635, 639 (2009) (citing 28 U.S.C. § 1367(c)); *Orton v. Johnny's Lunch Franchise*, 668 F.3d 843, 850 (6th Cir.

2012). Here, the balance of the relevant considerations weighs against the continued exercise of supplemental jurisdiction. Therefore, in the opinion of the undersigned, Plaintiff's state-law claims should be dismissed.

Accordingly, it is recommended that Defendant Boudreau's motion for summary judgment (ECF No. 55) be granted. It is further recommended that the Court should not retain supplemental jurisdiction over Plaintiff's state law claims against Defendant Boudreau. Therefore, Defendant Boudreau should be dismissed from this case.

NOTICE TO PARTIES: Objections to this Report and Recommendation must be served on opposing parties and filed with the Clerk of the Court within fourteen (14) days of receipt of this Report and Recommendation. 28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b); W.D. Mich. LCivR 72.3(b). Failure to file timely objections constitutes a waiver of any further right to appeal. *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). *See also Thomas v. Arn*, 474 U.S. 140 (1985).

Dated: May 17, 2017

    /s/ Timothy P. Greeley  
TIMOTHY P. GREELEY  
UNITED STATES MAGISTRATE JUDGE