UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

D'ANDRE ALEXANDER #731077,

    Plaintiff,

v.                                                            Case No. 2:16-cv-96
                                                          HON.  GORDON J.  QUIST

MANDI JOY SALMI, et al.,

    Defendants.
_____/

### REPORT AND RECOMMENDATION

Plaintiff D'Andre Alexander filed this *pro se* civil rights action pursuant to 42 U.S.C. § 1983, alleging constitutional violations and state law violations that occurred while he was incarcerated at Marquette Branch Prison.[1] The Court previously denied Defendants' motion for summary judgment on the issue of exhaustion in part because there were genuine issues of fact as to whether Plaintiff exhausted all available administrative remedies.  On June 7, 2017, the undersigned held an evidentiary hearing to resolve the factual disputes.[2]  For the reasons stated below, the undersigned now recommends that Plaintiff be found to have exhausted his available administrative remedies.

Pursuant to the applicable portion of the Prison Litigation Reform Act (PLRA), 42 U.S.C. § 1997e(a), a prisoner bringing an action with respect to prison conditions under 42 U.S.C. § 1983 must exhaust his available administrative remedies.  *See Porter v. Nussle*, 534 U.S. 516, 532 (2002); *Booth v. Churner*, 532 U.S. 731, 733 (2001).  A prisoner must first exhaust available

---

[1] The remaining Defendant in this case include: Mental Health Case Manager Mandi Joy Salmi; Mental Health Staff Members Tom Osier, Robin Bailey-Webb, Amy Robare, and Mark Hares; Mental Health Unit Chief Paul Eyke; and Correctional Officer (unknown) Lombard.

[2] At this evidentiary hearing, the undersigned heard testimony regarding exhaustion issues in four of Plaintiff's cases—*Alexander v. Govern et al.,* 2:16-cv-66; *Alexander v. Salmi et al.,* 2:16-cv-96; *Alexander v. Kind et al.,* 2:16-cv-98; *Alexander v. Govern,* 2:16-cv-166.

administrative remedies, even if the prisoner may not be able to obtain the specific type of relief he seeks in the state administrative process. *See Porter*, 534 U.S. at 520; *Booth*, 532 U.S. at 741; *Knuckles El v. Toombs*, 215 F.3d 640, 642 (6th Cir. 2000); *Freeman v. Francis*, 196 F.3d 641, 643 (6th Cir. 1999). In order to properly exhaust administrative remedies, prisoners must complete the administrative review process in accordance with the deadlines and other applicable procedural rules. *Jones v. Bock*, 549 U.S. 199, 218-19 (2007); *Woodford v. Ngo*, 548 U.S. 81, 90-91 (2006). "Compliance with prison grievance procedures, therefore, is all that is required by the PLRA to 'properly exhaust.'" *Jones*, 549 U.S. at 218-19. In rare circumstances, the grievance process will be considered unavailable where officers are unable or consistently unwilling to provide relief; where the exhaustion procedures may provide relief, but no ordinary prisoner can navigate it; or "where prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." *Ross v. Blake*, 136 S.Ct. 1850, 1859-60 (2016).

MDOC Policy Directive 03.02.130 (effective July 9, 2007), sets forth the applicable grievance procedures for prisoners in MDOC custody at the time relevant to this complaint. Inmates must first attempt to resolve a problem orally within two business days of becoming aware of the grievable issue, unless prevented by circumstances beyond his or her control. *Id.* at ¶ P. If oral resolution is unsuccessful, the inmate may proceed to Step I of the grievance process and submit a completed grievance form within five business days of the attempted oral resolution. *Id.* at ¶¶ P, V. The Policy Directive also provides the following directions for completing grievance forms: "The issues should be stated briefly but concisely. Information provided is to be limited to the <u>facts</u> involving the issue being grieved (i.e., who, what, when, where, why, how). Dates, times, places and names of all those involved in the issue being grieved are to be included." *Id.* at ¶ R (emphasis in original).

If the inmate is dissatisfied with the Step I response, or does not receive a timely response, he may appeal to Step II by obtaining an appeal form within ten business days of the

response, or if no response was received, within ten days after the response was due. *Id.* at ¶¶ T, BB. The respondent at Step II is designated by the policy. *Id.* at ¶ DD. If the inmate is still dissatisfied with the Step II response, or does not receive a timely Step II response, he may appeal to Step III using the same appeal form. *Id.* at ¶¶ T, FF. The Step III form shall be sent within ten business days after receiving the Step II response, or if no Step II response was received, within ten business days after the date the Step II response was due. *Id.* at ¶¶ T, FF. The Grievance and Appeals Section is the respondent for Step III grievances on behalf of the MDOC director. *Id.* at ¶ GG.

A prisoner's failure to exhaust administrative remedies is an affirmative defense, which Defendants have the burden to plead and prove by a preponderance of the evidence. *See Lee v. Willey,* 789 F.3d 673, 678 (6th Cir. 2015); *Jones v. Bock*, 549 U.S. 199, 212-16 (2007). When factual disputes arise regarding the issue of exhaustion, the Sixth Circuit has found that a district court may resolve the disputes in a bench trial. *Lee v. Willey,* 789 F.3d 673, 678 (6th Cir. 2015).

In this case, Defendants moved for summary judgment on the ground of exhaustion because Plaintiff did not file any grievances related to his claims through Step III. In response, Plaintiff explained that he attempted to file grievances, but prison officials refused to send the grievances. The Report and Recommendation summarized Plaintiff's allegations:

> Plaintiff filed five grievances related to his claims in this case. On October 28, 2014, Plaintiff filed Grievance # MBP-14-10-01881-12B4. At Step 1, Plaintiff alleged that Defendant Salmi was not accommodating his mental health needs. Plaintiff further complained that he was not receiving sufficient counseling and requested a new case manager. Plaintiff's grievance was subsequently denied at Step I by Defendant Bailey-Webb, who was the respondent, and Defendant Eyke, who was the reviewer. At Step II, Plaintiff again complained about Defendant Salmi. Plaintiff also added that he was pressured to "sign off" on the grievance by the respondent at Step I and that Defendant Boudreau retaliated against him by taking Plaintiff off his anti-depressant medication. Plaintiff's grievance was subsequently denied at Step II by Defendant Osier. At Step III, Plaintiff alleged that the Step II respondent violated policy by "not ever having his illegal response reviewed." PageID.17. After writing the Step III grievance, Plaintiff alleges that he gave the grievance to Fred Govern, who is an ARUS at Marquette Branch Prison, on January 20, 2015. However,

Plaintiff alleges that he never received a response to his Step III grievance.

One June 3, 2015, Plaintiff filed Grievance # MBP-15-06-01007-12B1. At Step I, Plaintiff alleged that Defendant Lombard refused to call mental health services after Plaintiff explained that he was having suicidal thoughts in segregation. Plaintiff also alleged that Defendant Salmi and "various John and Jane Doe Nurses" refused to respond to his medical kites. Plaintiff now alleges that the "various John and Jane Doe Nurses" are Defendants Robare and Hares. Plaintiff further alleged that he notified the Mental Health Unit Chief of his suicidal thoughts, but Plaintiff never received a response. Plaintiff alleges that Defendant Eyke is the Mental Health Unit Chief. Plaintiff's grievance was subsequently denied at Step I by Defendant Hares, who was the respondent, and Defendant Eyke, who was the reviewer. Plaintiff alleges that he requested the forms required to appeal to Step II. After not receiving the required forms, Plaintiff alleges that he attempted to submit a handwritten Step II grievance. In this handwritten grievance, Plaintiff reiterated the facts in Step I. Plaintiff alleges that he never received a response on his Step II grievance. Shortly thereafter, Plaintiff attempted to submit a handwritten Step III grievance. Plaintiff alleges that he gave the Step III grievance to Fred Govern, but never received a response.

One May 12, 2015, Plaintiff filed Grievance # MBP-15-05-00833-12B3. At Step I, Plaintiff alleged that Defendant Salmi was disregarding Plaintiff's mental needs by failing to help Plaintiff be removed from segregation. Plaintiff's grievance was subsequently denied at Step I by Defendant Robare, who was the respondent, and Defendant Eyke, who was the reviewer. At Step II, Plaintiff alleged that he raised claims of conspiracy and deliberate indifference against Defendant Robare. Plaintiff did not receive a response on his Step II grievance. Shortly thereafter, Plaintiff attempted to submit a handwritten Step III grievance. Plaintiff alleges that he gave the Step III grievance to Fred Govern, but never received a response.

On June 22, 2015, Plaintiff filed Grievance # MBP-15-06-01089-12B3. At Step I, Plaintiff alleged that Defendant Robare was not allowing Plaintiff to appeal his segregation placement because he did not have a proper medical diagnosis. Plaintiff also alleged that he showed Defendants Hares and Robare medical documentation of his mental illness diagnosis. Plaintiff's grievance was subsequently denied at Step I by Defendant Hares, who was the respondent, and Defendant Eyke, who was the reviewer. Plaintiff alleges that he requested the forms required to appeal to Step II. After not receiving the required forms, Plaintiff attempted to submit a handwritten Step II grievance. In this handwritten grievance, Plaintiff reiterated the facts in Step I. Plaintiff alleges that he never received a response on his Step II grievance. Shortly thereafter, Plaintiff attempted to submit a

> handwritten Step III grievance. Plaintiff alleges that he gave the Step III grievance to Fred Govern, but never received a response.
>
> On June 7, 2015, Plaintiff filed Grievance #MBP-15-06-0991-17I. At Step I, Plaintiff alleged that Defendant Salmi refused to "acknowledge, address, and log medical kites." Plaintiff's grievance was subsequently denied at Step I by Defendant Robare, who was the respondent, and Defendant Eyke, who was the reviewer. Plaintiff alleges that he requested the forms required to appeal to Step II. After not receiving the required forms, Plaintiff attempted to submit a handwritten Step II grievance. In this handwritten grievance, Plaintiff reiterated the facts in Step I. Plaintiff also added that Defendant Robare lied when she responded to the grievance at Step I. Plaintiff alleges that he never received a response on his Step II grievance. Shortly thereafter, Plaintiff attempted to submit a handwritten Step III grievance. Plaintiff alleges that he gave the Step III grievance to Fred Govern, but never received a response.

(ECF No. 58, PageID.473-476) (footnotes omitted.) Based on Plaintiff's allegations, the Court found that there were issues of fact as to whether Plaintiff exhausted all *available* administrative remedies.

At the evidentiary hearing, ARUS Fred Govern testified. He stated that he has never destroyed a prisoner's grievances or legal mail. He stated that if he receives a grievance from a prisoner, he always sends the grievance to the grievance coordinator at the facility. He also stated that if a prisoner gives him legal mail, he makes sure that it is properly filled out, processes it, and brings it to the mail room. He stated that legal mail that is going to state officials, courts, or other attorneys qualify for expedited legal mail and the prisoner receives a receipt. He claims that he never destroyed any of Plaintiff's grievances and that he never told Plaintiff that he destroyed any grievances.

On cross-examination, Plaintiff showed ARUS Govern two receipts for expedited legal mail that ARUS Govern signed.[3] Plaintiff subsequently asked ARUS Govern why the legal mail described in the receipts was never delivered.[4] ARUS Govern responded that he processes the mail

---

[3] The receipts are attached to Plaintiff's complaint in *Alexander v. Govern,* 2:16-cv-166. (ECF No. 1, PageID.18-19.)
[4] The legal mail receipts do not appear to be receipts for the grievances in this case because ARUS Govern testified that grievances do not qualify for expedited legal mail.

-5-

and delivers it to the mailroom and he does not know what happens to the mail after he delivers it to the mailroom. ARUS Govern also recalled that Plaintiff had given him many grievances in the past.

Plaintiff also testified during the evidentiary hearing. He stated that he gave ARUS Govern several Step III grievances. He also stated that he has a history of filing grievances and that he knows he must always exhaust his administrative remedies. He explained that he was able to exhaust some grievances through Step III while housed at Marquette Branch Prison, but in other instances the Step III grievances did not make it to Lansing.

As mentioned above, Defendants have the burden to show that Plaintiff failed to exhaust all available administrative remedies. In the opinion of the undersigned, Defendants have failed to meet their burden. First, Defendants did not address why Plaintiff never received responses to any of his Step II grievances. Similarly, Defendants did not address why Plaintiff did not have the proper appeal forms and was forced to handwrite most of his Step II and Step III grievances.

In addition, the undersigned finds Plaintiff's testimony to be reasonably credible. The fact that Plaintiff has successfully pursued several other grievances through Step III supports Plaintiff's position. Plaintiff has demonstrated that he knows the grievance procedure and exercises his diligence in following these procedures. Simply, it does not make sense that Plaintiff—who is never shy to voice his complaints and has obviously filed numerous grievances—would not attempt to file Step II and Step III grievances. It is unclear whether ARUS Govern refused to deliver the grievances to the mailroom, a different prison official interfered with the grievances, or something else happened. However, it is ultimately Defendants' burden to show that Plaintiff did not comply with the prison grievance procedures. Here, Defendants have failed to meet that burden.

Accordingly, the undersigned finds that Defendants did not meet their burden to demonstrate that Plaintiff failed to properly exhaust his claims. Therefore, the undersigned recommends that Plaintiff be found to have exhausted his available administrative remedies.

NOTICE TO PARTIES:  Objections to this Report and Recommendation must be served on opposing parties and filed with the Clerk of the Court within fourteen (14) days of receipt of this Report and Recommendation.  28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b); W.D. Mich. LCivR 72.3(b).  Failure to file timely objections constitutes a waiver of any further right to appeal.  *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).  *See also Thomas v. Arn*, 474 U.S. 140 (1985).

Dated:   June 27, 2017                             */s/ Timothy P. Greeley*
                                                                  TIMOTHY P. GREELEY
                                                                  UNITED STATES MAGISTRATE JUDGE